CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED

AUG 11 2006

JOHN F. CORCORAN, CLERK
BY: /s/
   DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| ROY M. TERRY, JR., and DURRETTE BRADSHAW PLC, RECEIVER FOR: TERRY L. DOWDELL *ET AL.*., <br><br> *Plaintiffs,* <br><br> v. <br><br> CHRISTOPHER W. DOWDELL, <br><br> *Defendant.* | CIVIL ACTION NO. 3:04-CV-00067 <br><br><br> MEMORANDUM OPINION <br><br><br><br> JUDGE NORMAN K. MOON |

This matter is before the Court on the Receiver's Verified Motion for Partial Summary Judgment, filed May 22, 2006. Defendant has not responded to the motion, despite this Court's notice of his opportunity to do so.

## I. BACKGROUND AND FINDINGS OF FACT

This matter arises in connection with a civil action brought by the Securities and Exchange Commission ("SEC") to recover funds illegally disbursed by Terry L. Dowdell ("Dowdell") while operating a Ponzi scheme in violation of Section 22(a) of the Securities Act of 1933, 15 U.S.C. § 77v(a) and Section 27 of the Securities Exchange Act of 1934, 15 U.S.C. § 78aa. *Securities and Exchange Commission v. Terry L. Dowdell*, Case No. 3:01CV00116 (W.D. Va. filed Nov. 19, 2001). On December 19, 2002, Dowdell was charged with wire fraud and securities fraud in a related criminal proceeding. *Securities and Exchange Commission v. Dowdell*, Case No. 3:02CR00107 (W.D. Va. filed Dec. 19, 2002).

1

From approximately April 1998 through the Spring of 2002, Dowdell raised more than $70 million through the sale of fictitious securities to would-be investors in a fraudulent trading program (the "Vavasseur Program") purportedly operated by the Bahamas-based Vavasseur Corporation ("Vavasseur"). *Consent & Stipulation*, Case No. 3:01CV00116, docket no. 218 ¶ 3 (June 4, 2002) (hereinafter "2002 Consent & Stipulation "). None of these funds were ever used for any trading program; rather, Dowdell, through Vavasseur, paid old investors with funds obtained from new investors. *Id.* at ¶ 5. Dowdell misappropriated millions of dollars of Vavasseur funds to pay for his business and personal expenses and transferred millions more to his marketers, business associates, family and friends.[1] *Id.* at ¶ 9.

Vavasseur investors had deposited more than $21 million into U.S. bank accounts, including various accounts in the name of T.L. Dowdell & Associates LLC at a Virginia Bank of America branch. *Id.* at ¶ 37. On October 26, 2001, Dowdell caused $500,000 to be transferred from one of these accounts to his personal account. (Exh. 11 at 2). That same day, he caused $20,000 to be wire transferred from his personal account to the Bank One account of Defendant Christopher Dowdell ("Defendant"). (Exh. 12 at 3). Defendant is a resident of Ohio and is the nephew of Dowdell and the son of David and Beverly Dowdell. *Answer* at ¶ 2.

---

[1] In May 2003, Dowdell voluntarily consented to entry of an Order Setting Amount of Disgorgement and Civil Penalties ("Order"). *Consent & Stipulation*, Case No. 3:01CV00116, docket no. 427 (May 29, 2003). SEC policy does not permit him to consent to the Order while denying allegations in the Order. *Id.* at ¶¶ 3, 9. The Order decreed that Dowdell was jointly and severally liable to disgorge $121,235,000.00 in ill-gotten Vavasseur investor funds, subject to certain reductions. *Order Setting Amount of Disgorgement*, Case No. 3:01CV00116, docket no. 426 at 3-4 (May 29, 2003).

Defendant signed a promissory note dated October 26, 2001, signature date November 1, 2001 (the "Note"), promising to pay Terry and Mary Dowdell the principal amount of $20,000, payable in monthly installments of $200.00 commencing March 1, 2002. (Exh. 3).

On the same day the SEC brought its civil enforcement suit against Dowdell, this Court froze his U.S. bank accounts. *Order Freezing Assets*, Case No. 3:01CV00116, docket no. 8 (Nov. 19, 2001). On February 27, 2002, the Court entered an Agreed Preliminary Injunction Order extending the asset freeze orders entered on November 19, 2001, November 19, 2001, and December 7, 2001. *Agreed Prel. Inj. Order*, Case No. 3:01CV00116, docket no. 151 (Feb. 27, 2002). To facilitate recovery of investor losses, this Court appointed Roy M. Terry, Jr. and the law firm of DurretteBradshaw PLC as Receiver for Dowdell and his various business entities. *Order Granting Jt. Mot. for Appoint. of Receiver*, Case No. 3:01CV00116, docket no. 243 (July 12, 2002) ("Appointment Order"). All of Dowdell's assets, including his interest in the Note, were transferred to the Receiver, *id.* at ¶ 1, and Mary Dowdell has assigned the Receiver her interest in the Note. (Exh. 13). Acting under his authority to pursue claims on behalf of Dowdell's creditors, *Appointment Order* at ¶ 2(g), the Receiver brought this action seeking return of the $20,000 that Dowdell transferred to Defendant.[2]

## II. STANDARD OF REVIEW

The Fourth Circuit has explained the appropriate standard of review in cases in which the nonmoving party has failed to respond to a motion for summary judgment:

---

[2] Count One states a fraudulent conveyance claim; Count Two claims unjust enrichment; Count Three seeks imposition of a constructive trust; Count Four requests judgment on a promissory note; and Count Five alleges money had and received.

3

> Th[e] failure to respond . . . does not fulfill the burdens imposed on moving parties by Rule 56. Section (c) of Rule 56 requires that the moving party establish, in addition to the absence of a dispute over any material fact, that it is "entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Although the failure of a party to respond to a summary judgment motion may leave uncontroverted those facts established by the motion, the moving party must still show that the uncontroverted facts entitle the party to "a judgment as a matter of law." The failure to respond to the motion does not automatically accomplish this. Thus, the court, in considering a motion for summary judgment, must review the motion, even if unopposed, and determine from what it has before it whether the moving party is entitled to summary judgment as a matter of law. This duty of the court is restated in section (e) of the rule, providing, "if the adverse party does not so respond, summary judgment, *if appropriate*, shall be entered against the adverse party." Fed. R. Civ. P. 56(e) (emphasis added).

*Custer v. Pan American Life Ins. Co.*, 12 F.3d 410, 415 (4th Cir. 1993).

Thus, the court is obligated to examine the pleadings, affidavits, and other proper discovery materials to determine whether any genuine issue of material disputed fact exists. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). It must view the facts in the light most favorable to the non-moving party, drawing inferences favorable to that party if such inferences are reasonable. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

## III. DISCUSSION

The Receiver brought this verified motion seeking partial summary judgment on the following issues: (i) Ohio's Uniform Fraudulent Transfers Act governs the Receiver's fraudulent conveyance claim; (ii) the Vavasseur Program was a Ponzi scheme; (iii) Terry Dowdell's transfer of $20,000 to the Defendant was made with actual intent to defraud Vavasseur's creditors; and (iv) the Defendant is liable to the Receiver for $20,000, less any repayments he can prove at trial.

### (1) The fraudulent conveyance claim is governed by Ohio law

Virginia choice of law principles apply to the Receiver's fraudulent conveyance claim.

4

*Terry v. June*, 420 F. Supp. 2d 493, 504 (W.D. Va. 2006); *see Klaxon Company v. Stentor Electric Manufacturing, Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Under Virginia law, the law of the jurisdiction where a wire transfer was completed governs a claim that the transfer was fraudulent. *June*, 420 F. Supp. 2d at 504. A wire transfer is completed "by acceptance by the beneficiary's bank of a payment order for the benefit of the beneficiary of the originator's payment order." *Id.*; Va. Code Ann. §8.4A-104(a).

Defendant admitted that he is an Ohio resident and that Dowdell transferred $20,000 to him on October 26, 2001. Dowdell's personal bank account statement lists a wire transfer in that amount on that date, and names "Christopher W. Dowdell" as the beneficiary and the receiving institution as "Bank One, N.A. ID: 044000037." (Exh. 12 at 3). Although the Receiver did not offer direct evidence on this point, the clear inference drawn from these facts, and from the request for summary judgment on the applicability of Ohio law, is that the Bank One that received Dowdell's transfer is located in Ohio. The Receiver's implicit, yet clear, representation is certified under penalty of perjury to be true and correct. *Verified PMSJ* at 12. There is no material issue of disputed fact—and the Receiver is entitled to judgment— that the wire transfer at issue was completed in Ohio and that Ohio's Uniform Fraudulent Transfer Act (UFTA) governs.

**(2) Dowdell operated the Vavasseur Program as a Ponzi scheme**

A Ponzi scheme is a "fraudulent investment arrangement whereby an entity makes payments to investors from monies obtained from later investors rather than from any 'profits' of the underlying business venture." *In re Ramirez Rodriguez*, 209 B.R. 424, 430 (Bkrtcy. S.D. Tex. 1997). To show that Dowdell operated the Vavasseur Program as such a scheme, the

5

Receiver must prove that he (i) received deposits from investors; (ii) conducted no legitimate business as represented to investors; (iii) produced no profits or earnings through legitimate investments or business, but rather raised funds by securing new investments from investors; and (iv) made payments to investors from other investors' invested funds. *Id.* at 431.

The Receiver's allegations that Dowdell was running a Ponzi scheme are established by his own admissions, and by proof of Dowdell's conviction in the related criminal proceeding. *SEC v. Dowdell*, Case No. 3:02CR00107 docket no. 45 (W.D. Va. July 21, 2004); *see* Fed R. Evid. 201 (entitling the Court to take judicial notice of adjudicative facts), *Martino v. Edison Worldwide Capital (In re Randy)*, 189 B.R. 425, 434 (Bankr. N.D. Ill. 1995) (facts pleaded in an indictment and established by conviction are competent evidence for summary judgment purposes). The Court is also entitled to judicially notice the facts concerning Dowdell's operation of a Ponzi scheme established in the record of the SEC enforcement case. *Order Granting Joint Motion for Permanent Injunction*, 3:01CV00116, docket no. 219 (June 4, 2002) (incorporating by reference *2002 Consent & Stipulation*).

The Receiver is entitled to judgment that Dowdell operated the Vavasseur Program as a Ponzi scheme.

### (3) Dowdell's transfer to the Defendant was made with actual intent to defraud

As the Receiver has established with undisputed competent evidence that Dowdell was operating the Vavasseur Program as a Ponzi scheme on October 26, 2001, and that he transferred $20,000 of the program's assets to Defendant, a rebuttable presumption arises that Dowdell, as operator of the scheme, (i) was insolvent on the date of the transfer, and (ii) made the transfer with actual intent to defraud Vavasseur investors. *See, e.g. Terry v. June*, 432 F. Supp. 2d 635,

6

640-41 (W.D. Va. 2006); *Floyd v. Dunson (In re Rodriguez)*, 209 B.R. 424, 432 (Bankr. S.D. Tex. 1997); *In re Independent Clearing House*, 77 B.R. 843, 860, 871 (D. Utah 1987).

The Defendant has offered no evidence rebutting either presumption, and thus the Receiver is entitled to judgment that Dowdell transferred the $20,000 to him with actual intent to defraud Vavasseur's creditors.

**(4) Defendant is liable to the Receiver for $20,000, less any repayments he can prove**

Ohio's UFTA provides in relevant part:

> (A) A transfer made or an obligation incurred by a debtor is fraudulent as to a creditor, whether the claim of the creditor arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation . . .
>
> (1) With actual intent to hinder, delay, or defraud any creditor of the debtor;

Ohio Rev. Code Ann. § 1336.04. A creditor may obtain avoidance of a fraudulent transfer to the extent necessary to satisfy the creditor's claim. *Id.* § 1336.07. However, a transfer is not fraudulent and may not be avoided if the transferee establishes that he took in good faith and for a reasonably equivalent value. *Id.* § 1336.08(A).

The undisputed evidence shows that Dowdell is a debtor vis-a-vis defrauded Vavasseur investors and that the Receiver is authorized to pursue claims on their behalf. As noted above, the Receiver has proved as a matter of law that Dowdell transferred the $20,000 to the Defendant with actual intent to defraud his creditors. The Defendant has not offered any evidence and therefore has not established that he is a good faith transferee. Therefore, under Ohio law, the Receiver is entitled to a judgment voiding the transfer and holding the Defendant liable to the Receiver for $20,000, less any repayments he can prove he made toward that amount.

7

The Receiver's Motion for Partial Summary Judgment will be granted in its entirety in an Order to follow.

The Clerk of the Court is directed to send a certified copy of this Memorandum Opinion to all counsel of record.

ENTERED: _____
U.S. District Judge

August 11, 2006
Date

8